IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES W. PATTON,

        Plaintiff,

v.                                 Civil Action No. 2:04cv30

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

## MEMORANDUM, OPINION AND REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A.    Background

Plaintiff, Charles W. Patton, (Claimant), filed his Complaint on April 23, 2004 seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed her Answer on July 13, 2004.[2] Claimant filed his Motion for Summary Judgment and Brief in Support Thereof on December 21, 2004.[3] Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on October 12, 2004.[4]

B.    The Pleadings

        1.    Claimant's Motion for Summary Judgment and Brief in Support Thereof.[5]

---

[1] Docket No. 1.

[2] Docket No. 3.

[3] Docket Nos. 10 and 11.

[4] Docket Nos. 4 and 5.

[5] Docket Nos. 10 and 11.

>		2.	Commissioner's Motion for Summary Judgment and Brief in Support Thereof.[6]

>	C.	Recommendation

>		1.	I recommend that this case be REMANDED for the ALJ to analyze Claimant's subjective complaints of pain in accordance with Craig v. Chater and recommend Claimant's Motion for Summary Judgment be DENIED as to the remaining issue because the ALJ properly analyzed Dr. Nagulendran's opinion. I recommend that Commissioner's Motion for Summary Judgment be Granted as to the remaining issue for the same reason set forth above.

## II.  Facts

A.	Procedural History

On August 12, 2002 Claimant filed for Disability Insurance Benefits (DIB) alleging disability since September 1, 1999. The application was denied initially and on reconsideration. A hearing was held on October 28, 2003 before an ALJ. The ALJ's decision dated January 15, 2004 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on February 27, 2004. This action was filed and proceeded as set forth above.

B.	Personal History

Claimant was 44 years old on the date of the October 28, 2003 hearing before the ALJ. Claimant has a limited eighth grade education and past relevant work experience as a laborer and machine operator for a blanket company.

C.	Medical History

---

[6] Docket Nos. 4 and 5.

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability September 1, 1999 - February 27, 2004:

**The Imaging Center , 1/25/02, Tr. 103-104**
- Nuclear Bone Scan - increased activity of the left knee, related to the repair of the anterior cruciate ligament.
    - Post-operative repair of the anterior cruciate ligament, which appears in satisfactory position.
    - Diffuse shortening of the medial meniscus, with history of previous meniscectomy, with no acute tear demonstrated.
    - Minimal short tear involving the mid-portion of the lateral meniscus, with no displacement.

**9/29/99, Tr. 106**
- MRI of the left knee - findings highly suspicious of a complete or high grade tear of the anterior cruciate ligament.

**8/12/99, Tr. 107-108**
- Three phase nuclear bone scan - slightly increased activity in the region of the distal left 4th metatarsal, compatible with a bone contusion or minor stress factor.
- Transverse tear involving the mid and posterior horn of the medial meniscus, with shortening of the free margin secondary to previous partial meniscectomy.

**Commonwealth Orthopedics, 11/12/01, Tr. 116**
- Persistent knee pain post ACL Reconstruction.

**[illegible] Smoller, M.D., 2/28/02, Tr. 121**

| | |
|---|---|
| AXIS I: | 1. Reactive depression, 300.4 with elements of Major Depressive Episode, 296.3, intermittently in the course. |
| AXIS II: | Probable learning disability, developmental deficit. |
| AXIS III: | Intercurrent Medical - Knee pain, status post four surgical procedures. |
| AXIS IV: | Current Stressors - vocational and financial |
| AXIS V: | Best Level of Functioning Past Year - FAIR |
| | Best Level of Functioning Currently - POOR to FAIR |

**Greater Chesapeake Orthopaedic Assoc., 5/8/02, Tr. 125**
**PLAN:** I have re-injected this area under sterile conditions with corticosteroid. I have told him I have nothing else to offer for treatment. I think he could return to work in a sedentary job capacity at this time.

**WMHS Memorial, Diagnostic Imaging Report, 7/9/02, Tr. 138**
Right ankle. No definite acute post traumatic osseous abnormality.

3

**Cumberland Regional MRI Center, 8/20/02, Tr. 146**
- **MRI Left Shoulder**: Approximately 3 cm x 2 cm diameter lobulated fluid collection is seen arising from the left acromioclavicular joint into a space between the trapezius muscle and the supraspinatus muscle most likely representing synovial cyst. No evidence of acute bony injury is noted on this examination. Remainder of the MRI examination of the left shoulder is unremarkable.

**7/18/97, Tr. 147**
- **MRI Left Knee:** Complex tear of the medial meniscus with apparent displaced hypointense soft tissue toward the midline suggesting bucket handle tear of the medial menisus. Mild to moderate knee joint effusion. Anterior cruciate ligament not distinctly seen except for a few very thin fibers. The possibility of an intrasubstance tear in the anterior cruciate ligament is considered. Single slice finding of linear vertical signal surfacing with an articular surface in the posterior horn of the lateral meniscus, suspicious for vertical meniscal tear. No other changes seen.

**Surgeons' Surgical Center, 1/19/00, Tr. 152-153**
- Internal derangement of the left knee with further tearing of the posterior horn of the medial meniscus and some mild defuse degeneration throughout the medial femoral condyle.

**Memorial Hospital, 8/1/97, Tr. 159-160**
- Internal derangement, left knee, with displace bucket handle tear.

**[illegible] Beard, M.D., 10/28/02, Tr. 165**
- Left knee injury.
- Status post surgery x 3 (described as menisecectomy on two occasions and ACL repair on the third)
- Possible posttraumatic arthritis of the left knee.
- Mild residual intercruciate insufficiency.
- Acute left shoulder strain.

**[illegilbe] Cosner-Shepherd M.S., 10/28/02, Tr. 167-174**
I.Q. v. 71, p. 80, FS 74
AXIS I: (303.90) Alcohol dependence, sustain partial remission.
　　　　　(311) Depressive disorder NOS.
　　　　　(315.9) Learning disability NOS.
AXIS II: (V62.89) Borderline intellectual functioning.
AXIS III: Pain in the left leg, difficulty walking, flat feet, back pain, poor energy, pain in the left shoulder and allergy to penicillin (self-report).

**Psychiatric Review Technique, Tr. 175-188, RFC Assessment**
- Organic mental disorder BIF-LD.
- Affective Disorder: A medically determinable impairment is present that does not

4

precisely satisfy the diagnostic criteria.
- B Criteria: Mild restrictions on daily living and maintaining concentration, moderate difficulties.
- Social Functioning: No episodes of decompensation . Evidence does not establish presence of C criteria.

**Physical Residual Functional Capacity Assessment**
**[illegible], M.D., 11/08/02, Tr. 189-196**
PRIMARY DIAGNOSIS:       Traumatic [illegible]
SECONDARY DIAGNOSIS:     Three left knee surgeries.
EXERTIONAL LIMITATIONS:  Occasionally 20 lbs., frequently 10 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push & pull.
POSTURAL LIMITATIONS:    Occasionally climbing, balancing, stooping, never kneeling, crouching, crawling.
MANIPULATIVE LIMITATIONS: None established.
VISUAL LIMITATIONS:      None established.
COMMUNICATIVE LIMITATIONS: None established.
Environmental Limitations: Unlimited, except avoid concentrated exposure to extreme cold, fumes, hazards.

**Mental Residual Functional Capacity Assessment, 11/08/02, Tr. 197-198**
- Not significantly limited:   7 of 20 categories.
- Moderately limited:          9 of 20 categories.
- No evidence of limitation:   4 of 20 categories.

**[illegible] Canvin, M.D., 1/28/03, Tr. 201**
- Severe degenerative joint disease in the knee. He has had the ACL replaced, as well as the meniscus removed. This is a severe form of degenerative joint disease.

**Canvin, M.D., 7/19/02, Tr. 205**
- Degenerative joint disease of the left knee with very mild effusion. He has had injections into the knee without benefit in the past.

**Physical Resicual Functional Capacity Assessment**
**[illegible] Brown, M.D., 2/13/03, Tr. 206-213**
PRIMARY DIAGNOSIS:       Surgery to ACL of left knee.
SECONDARY DIAGNOSIS:     Arthralgia left shoulder.
EXERTIONAL LIMITATIONS:  Occasionally 20 lbs., frequently 10 lbs., sit or stand 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS:    All occasionally.
MANIPULATIVE LIMITATIONS: None established.
VISUAL LIMITATIONS:      None established.
COMMUNICATIVE LIMITATIONS: None established.
ENVIRONMENTAL LIMITATIONS: None established.

**N.A. Gulendran, M.D., 10/13/03, Tr. 214**

- Mr. Charles Patton suffers from such severe depression and feelings of hopelessness and preoccupation with his chronic, severe and unremitting pain that he would be markedly limited in his ability to maintain concentration and attention for extended periods. He is frequently unable to follow a conversation and loses his train of thought due to severe concentration problems. He would be unable to work at a consistent pace on any reliable basis as evidenced by his difficulty in completing simple household tasks in a timely manner. He would also be unable to cope with the stress of working under time pressures. The combination of these factors results in the marked limitation of work-related abilities. I believe, therefore, that his unrelenting illness would prevent him from engaging in any substantial employment at this time.
- I am planning to continue to treat him, and as an important part of treatment, I intend to encourage him to seek gainful employment as soon as he shows signs of improvement in his present illness.

D.      Testimonial Evidence

### 1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 223-25):

Q      What problems are you having with your left knee?

A      Pain in it all the time.

Q      Do you take medication for pain in your left knee?

A      Yes, sir.

Q      Does that help, not help, makes no difference?

A      It helps a little bit.

Q      You walk with the aid of a cane or crutches?

A      I walk with a cane sometimes.

Q      Are you using a cane presently?

A      No.

                        *              *              *

A      Every one I went to said that I need a full knee replacement.

Q      Why hasn't that been done?

A      They said I'm too young.

Q      How many surgeries have you had on your knees so far?

A      Three.

## 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 227-28):

Q      Assume the hypothetical person, the same age, education and work experience as the claimant. And how has reached the capacity to do light work, unskilled with a sit/stand option. Can you identify any jobs that such a hypothetical - - let me start that again. Assume that a hypothetical person will have the same age, education and work experience as the claimant, and who has the capacity to do light work, unskilled, with a sit/stand option, with limited general public contact. Can you identify any jobs that such a hypothetical person can perform on a sustained basis, and which jobs exist in significant numbers in the national economy?

A      Yes, Your Honor. The first position would be that of machine tender. In the United States there are 62,000 of these positions. In the local economy - - I define the local economy as an area referred to as Western Maryland, to include the adjacent portions of West Virginia, Pennsylvania. I use Cumberland, Maryland as the Metropolitan statistical reporting site for analysis and preparation to these proceedings. In that local area, 1,500 of these positions exist. The second example would be that of inspector, nationally 48,000 exist. And in the previously described local economy, 900 of these positions are in existence. And a third

example would be that of packer and packaging worker. Nationally 47,000 exist. In the local economy 1,000. I offer these as examples only, Your Honor. This is not intended to be an exhaustive list.

  Q  In your professional judgment, would the conclusions to that hypothetical be essentially the same or different than the <u>Dictionary of Occupational Titles</u>? And if your conclusions were to change, how, how would those changes be based?

  A  Your Honor, my testimony is consistent with the <u>Dictionary of Occupational Titles</u>.

           *    *    *

  E.  <u>Lifestyle Evidence</u>

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

- 5' 10" tall and weighs 255 lbs. (Tr. 221).
- Able to drive. (Tr. 222).

## II. The Motions for Summary Judgment

A.  <u>Contentions of the Parties</u>

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ failed to properly analyze Dr. Nagulendran's opinion. Also, Claimant maintains that the ALJ failed to properly analyze Claimant's subjective complaints of pain.

Commissioner maintains that the ALJ's decision was supported by substantial evidence.

Specifically, Commissioner contends that the ALJ properly analyzed Dr. Nagulendran's opinion. Commissioner did not respond to the issue of pain.

B.   The Standards.

1.   Summary Judgment.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.   Judicial Review.  Only a final determination of the Commissioner may receive judicial review.  See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.   Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.   Social Security - Medically Determinable Impairment.  The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.  42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of

9

Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

     5.     <u>Disability Prior to Expiration of Insured Status- Burden</u>.  In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.  <u>Highland v. Apfel</u>, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); <u>Stephens v. Shalala</u>, 46 F.3d 37, 39 (8th Cir.1995)).

     6.     <u>Social Security - Standard of Review</u>.  It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.  <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

     7.     <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>.  The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."  <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence.  <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235-36 (4th Cir. 1984).

     8.     <u>Social Security - Substantial Evidence - Defined</u>.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

     9.     <u>Social Security - Sequential Analysis</u>.  To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine:

1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

      10. Social Security - Treating Physician - Controlling Weight - The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). See also Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990).

      11. Social Security - Claimant's Credibility - Pain Analysis. The determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

C.    Discussion

### 1. Treating Psychiatrist

Claimant asserts that the ALJ failed to properly analyze the opinion of Claimant's treating

psychiatrist Dr. V. Nagulendran. Commissioner counters that the ALJ properly analyzed Dr. V. Nagulendran's opinion.

The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). See also Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990).

Dr. Nagulendran's opinion is not based on medically acceptable clinical and laboratory diagnostic techniques but rather on claimant's testimony. (Tr. 214). Dr. Nagulendran reported that Claimant "would be unable to work at a consistent pace on any reliable basis as evidenced by his difficulty in completing simple household tasks in a timely manner." (Tr. 214). Dr. Naguldendran did not cite to any clinical or laboratory diagnostic techniques in his one page report. (Tr. 214). Also, Dr. Nagulendran's opinion is not consistent with other substantial evidence in the case record. Dr. Naguldendran found Claimant "markedly limited in his ability to maintain concentration and attention for extended periods." (Tr. 214). Psychologist, Cosner-Shepherd, M.S. administered psychological tests on Claimant and found Claimant's concentration and persistence within normal limits and his pace mildly slow. (Tr. 167-174). Therefore, the ALJ properly evaluated Dr. Naguldendran's opinion.

### 2. Pain

Claimant asserts that the ALJ failed to evaluate Claimant's complaints of pain. Commissioner failed to respond to this issue.

The determination of whether a person is disabled by pain or other symptoms is a two step

process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

The ALJ stated "that the claimant's subjective complaints are credible to the extent that he is precluded from performing work requiring a higher residual functional capacity than for less than the full range of light work with limitations. . . ." (Tr. 20). The ALJ also stated that "claimant's allegations of pain are not of a severity that interfere with his concentration and ability to watch television 2 to 3 times a [day]; work on his hobby weekly; take care of his personal needs; and perform light housework and drive." (Tr. 20). The ALJ did not follow the steps required by Craig v. Chater. The ALJ failed to first expressly consider whether claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. After expressly considering step one, the ALJ should assess the credibility of Claimant's subjective allegations of pain in light of the entire record. Therefore, I Recommend that this case be REMANDED for the ALJ to analyze Claimant's subjective complaints of pain in accordance with Craig v. Chater.

**IV. Recommendation**

For the foregoing reasons, I recommend that this case be REMANDED for the ALJ to analyze Claimant's subjective complaints of pain in accordance with Craig v. Chater and recommend Claimant's Motion for Summary Judgment be DENIED as to the remaining issue because the ALJ properly analyzed Dr. Nagulendran's opinion. I recommend that Commissioner's Motion for

Summary Judgment be Granted as to the remaining issue for the same reason set forth above.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: April 28, 2005

/s/ James E. Seibert

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE